IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS LOCAL UNION NO. 98 HEALTH & WELFARE FUND, et al. | : : : : : | CIVIL ACTION |
| v. | : : | |
| LMI ELECTRIC INC, et al. | : | NO. 15-380 |

MEMORANDUM

Dalzell, J.                                                                                              July 17, 2015

## I.    Introduction

We consider here defendants' motion to dismiss plaintiffs' second amended complaint.[1] We have jurisdiction pursuant to the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(e), and the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a).

Plaintiffs are the International Brotherhood of Electrical Workers ("IBEW") Local Union No. 98 Health & Welfare Fund (the "Health Plan"), IBEW Local Union No. 98 Pension Plan (the "Pension Plan"), IBEW Local Union No. 98 Profit Sharing Plan, also known as the Local Union 98 Deferred Income Plan (the "Profit Sharing Plan"), the Electrical Workers Joint Apprenticeship and Training Trust Fund (the "Apprenticeship Fund"), the National Electrical

---

[1] Plaintiffs filed their initial complaint on January 26, 2015. After defendants moved to dismiss, plaintiffs filed an amended complaint on May 4, 2015. Defendants then filed a second motion to dismiss. At the same time that plaintiffs filed their response in opposition to that motion they also filed a second amended complaint, but argued that "nothing in the Second Amended Complaint substantively changes the underlying objections of the Defendants." Pl. Mot. for Leave at 2. Defendants agreed with plaintiffs "that the proposed Amended Complaint does not substantively change Defendants' underlying objections to Plaintiffs' claims." Def. Non-Opposition at 1. We permitted plaintiffs to file their second amended complaint and did not order additional briefing. In deciding the instant motion, we have considered plaintiffs' second amended complaint, defendants' second motion to dismiss plaintiffs' amended complaint, plaintiffs' response in opposition thereto, and the exhibits attached to the initial and first amended complaints.

Benefit Plan (the "NEBF"), the National Electrical Industry Fund (the "NEIF"), Local Union No. 98 Vacation Plan (the "Vacation Plan"), the Labor Management Cooperative Committee (the "LMCC"), and Local Union 98 of the IBEW ("Local 98"). Second Am. Compl. at ¶¶ 3-8. Defendants are LMI Electric Inc. ("LMI"), Gina Console, and Anthony Console. Id. at ¶¶ 11-13.

Plaintiffs allege LMI failed to submit the full amount of contributions and deductions owed to the Health Plan, Pension Plan, Profit Sharing Plan and Apprenticeship Fund (collectively the "Funds"), Vacation Plan, NEIF, LMCC, NEBF, and Local 98 for the period of August 1, 2012 through August 31, 2014. Id. at ¶¶ 19, 26. The Funds also allege that Gina Console and Anthony Console breached their fiduciary duties under ERISA and are personally liable for the outstanding contributions and deductions. Id. at ¶¶ 41, 44-48.

Defendants move to dismiss both counts of the second amended complaint.

**II.     Standard of Review**

A defendant moving to dismiss under Fed R. Civ. P. 12(b)(6) bears the burden of proving that the plaintiff has failed to state a claim for relief. See Fed. R. Civ. P. 12(b)(6); see also, e.g., Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005). To survive a Rule 12(b)(6) motion, the complaint must contain sufficient factual matter, accepted as true, to state a facially plausible claim to relief. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

As the Supreme Court stresses, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of

the elements of a cause of action…do not suffice." Id. Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." Twombly, 550 U.S. at 555.

In the wake of Twombly and Iqbal, our Court of Appeals laid out a two-part test to apply when considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6):

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'

Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (internal citations omitted). In deciding a motion to dismiss, we may consider "the allegations contained in the complaint, exhibits attached to the complaint and matters of public record," and any "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Pension Benefits Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

We recite the facts as they appear in the second amended complaint.

### III. Factual Background

The Funds and NEBF are either trust funds established under 29 U.S.C. § 186(c)(5) or "multiemployer plans" and "employee benefit plans" within the meaning of 29 U.S.C. § 1002(37), (1), (2), and (3). Second Am. Compl. at ¶¶ 3-4. The NEIF is a fund established by the National Electrical Contractors Association for the purpose of fostering and advancing the interests of electrical contractors. Id. at ¶ 5. The Vacation Plan is a fund established pursuant to a collective bargaining agreement to provide vacation benefits to employees. Id. at ¶ 6. LMCC is a joint labor-management cooperation committee created by Section 6(b) of the Labor

Management Cooperation Act of 1978, 29 U.S.C. § 175(a) and Section 302(c)(9) of the LMRA, 29 U.S.C. § 186(c)(9). Id. at ¶ 7. Local 98 is an unincorporated association, commonly referred to as a labor union, and is certain LMI employees' exclusive representative for the purposes of collective bargaining. Id. at ¶ 8.

LMI, through its owner, Gina Console, has executed two letters of assent authorizing the Penn-Del-Jersey Chapter of the National Electrical Contractors Association (the "NECA") to be its collective bargaining representative. See First Am. Compl. Exs. B, D. The first letter of assent, signed on December 17, 2007 authorizes the Penn-Del-Jersey Chapter to act on LMI's behalf with respect to present and future "inside" labor agreements with Local Union 654 of the IBEW. First Am. Compl. Ex. B. The second letter of asset, signed on August 20, 2013, authorizes the Philadelphia Division of the Penn-Del-Jersey Chapter to act on LMI's behalf with respect to the current and any subsequent "inside commercial" labor agreements with Local 98. First Am. Compl. Ex. D. LMI agrees in both letters "to comply with, and be bound by, all of the provisions contained in said current and subsequent approved labor agreements." First Am. Compl. at Exs. B, D.

On September 5, 2014, on behalf of the Funds, Vacation Plan, NEIF, LMCC, and Local 98, the firm of Novak Francella LLC completed a payroll compliance review report that showed LMI owed $230,085.67 in contributions, interest, and liquidated damages to the Funds, the Vacation Plan, NEIF, LMCC, and Local 98. Second Am. Compl. at ¶ 19; First Am. Compl. Ex. E at 1-2. Novak Francella LLC also completed a payroll compliance review on behalf of the NEBF that concluded that LMI owed $8,074.19 in contributions. Second Am. Compl. at ¶ 26 & Ex. H at 3.

In a letter to Novak Francella LLC, Anthony Console contested portions of the first audit and recounted his dealings on LMI's behalf with Local 98's Business Manager and attorney. Second Am. Compl. at ¶ 21; First Am. Compl. Ex. G. Plaintiffs allege that LMI has not yet paid the amounts owed to the Funds, Vacation Plan, NEIF, LMCC, NEBF, or Local 98. Second Am. Compl. at ¶¶ 22, 26.

In Count I of the second amended complaint, plaintiffs claim that LMI owes them a principal delinquency of $182,714.99.[2] Id. at ¶ 28. Plaintiffs claim that LMI's failure to pay the amounts due to the Funds, Vacation Plan, NEIF, LMCC, NEBF, and Local 98 breaches the terms of their Collective Bargaining Agreements and 29 U.S.C. § 1145. Id. at ¶ 29.

In Count II of the second amended complaint, the Funds claim that both Gina Console and Anthony Console "have been and are owners and/or principal officers of" LMI. Id. at ¶ 38. Because Gina Console and Anthony Console "exercised control over the disposition of money that became a plan asset immediately upon the date [LMI's] obligation to contribute arose" and "exercised authority and control over the management and disposition of certain Trust Fund assets," the Funds argue that the individual defendants are fiduciaries under ERISA. Id. at ¶¶ 39-41. The Funds argue that Gina Console and Anthony Console breached their fiduciary duties and, pursuant to 29 U.S.C. § 1109(a), are personally liable for the $136,844.29 in outstanding principal owed to the Funds. Id. at ¶¶ 45-48.

---

[2] Plaintiffs also plead that interest is accruing on the principal amounts owed, calculated at the rate of two percent per month, and that LMI owes liquidated damages in the amount of ten percent of the principal amount owed, pursuant to Sections 3.10(b) and 3.11 of the Local 98 collective bargaining agreement, the Local 654 Collective Bargaining Agreement, and 29 U.S.C. § 1132(g)(2)(C). Id. at ¶¶ 30-31. Plaintiffs also claim LMI owes them attorney's fees and the cost of litigation pursuant to 29 U.S.C. § 1132(g)(2)(D). Id. at ¶ 32.

**IV.**   **Discussion**

  **A.**   **Count I: All Plaintiffs v. LMI**

Moving to dismiss Count I of the second amended complaint, LMI claims that it does not owe any outstanding contributions to plaintiffs and that the proffered audit report was both "prepared by a biased auditor" and "factually inaccurate." Second MTD Mem. at 4-5. For the purposes of its motion to dismiss, LMI concedes the existence of the Collective Bargaining Agreements ("CBA") pursuant to the Letters of Assent. Id. at 5. But LMI argues that "[n]othing in the CBA demands that pre-existing employees join the union, or that an Employer make contributions on their behalf." Id. at 6. LMI further argues that it made the required contributions for "the employees actually covered by the CBA for the period of time those employees actually worked" and has therefore fully met its obligations. Id. at 7.

When deciding a motion to dismiss, we must determine whether a complaint contains sufficient factual matter, accepted as true, to state a facially plausible claim to relief. Iqbal, 556 U.S. at 678; Twombly, 550 U.S. at 570. Put another way, we accept the well-plead factual allegations contained in the complaint as true. Fowler, 578 F.3d at 210-11. As such, LMI's arguments contesting the factual validity of the audit report are unavailing in this particular procedural posture.

LMI also argues that it is not in breach of the CBA because it is not obligated to make contributions for employees not covered under the CBA -- and non-union employees are not covered. See Second MTD Mem. at 6-7. As explained in Byrnes v. DeBolt Transfer, Inc., Section 8(a)(3) of the National Labor Relations Act, 29 U.S.C. § 158(a)(3) is construed to mean "an employer may not encourage or discourage union membership by means of discrimination," and as such Section 8(a)(3) also prohibits making contributions to certain employee benefit funds

only on the behalf of union members. 741 F.2d 620, 623 (3d Cir. 1984). LMI, as the moving party, bears the burden of proving that the plaintiffs have failed to state a claim for relief. Fed. R. Civ. P. 12(b)(6); Hedges, 404 F.3d at 750. In this procedural posture, we will not construe either CBA as requiring or permitting LMI to engage in such prohibited practices.

Plaintiffs have pled that LMI was contractually obligated, via the Letters of Assent and corresponding CBAs, to make certain contributions to them on behalf of LMI's employees. LMI concedes, for the purposes of the motion to dismiss, that there are such CBAs and Letters of Assent. Plaintiffs argue, by reference to an audit report, that LMI is in breach of the CBAs because it has failed to make certain contributions, and that plaintiffs are damaged by LMI's failure to pay. Because LMI merely contests the truth of plaintiffs' well-pled facts, it fails to meet its burden under Fed. R. Civ. P. 12(b)(6) of showing that plaintiffs' complaint fails to state a claim upon which relief can be granted. We will therefore deny defendants' motion to dismiss Count I of the second amended complaint against LMI.

### B. Count II: The Funds v. Gina Console and Anthony Console

Moving to dismiss Count II, Gina Console and Anthony Console contend that (1) unpaid contributions are not Plan "assets" within the meaning of the Plan documents, and (2) neither individual defendant exercised control over any other plan asset. Second MTD Mem. at 8. The individual defendants also argue that Anthony Console "undertook no fiduciary actions and should be individually dismissed." Id.

As defined by ERISA, "a person is a fiduciary with respect to a plan to the extent…he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets." 29 U.S.C. § 1002(21)(A)(i). The "linchpin of fiduciary status under ERISA is discretion," and

"ERISA broadly defines a fiduciary." Curcio v. John Hancock Mut. Life Ins. Co., 33 F.3d 226, 233 (3d Cir. 1994). To hold a person liable as an ERISA fiduciary, we need only ask (1) whether the unpaid contributions were plan assets and (2) whether the individual exercised discretionary control or authority over such assets. Teamsters Health & Welfare Fund of Phila. & Vicinity v. World Transp., Inc., 241 F. Supp. 2d 499, 505 (E.D. Pa. 2003).

We turn first to whether the unpaid contributions to the Funds were "plan assets." The individual defendants argue that they were not because the unpaid contributions constitute "money never in the account of the plan's Trustee" and "are, at most, receivables which are in dispute." Second MTD Mem. at 9.

ERISA does not define "plan assets" in the context of employer contributions, and so we look to the terms of the agreements creating the benefits plans to define the term. See, e.g., Bottle Beer Drivers, Warehouseman & Helpers Teamsters Local 843 v. Anheuser Busch Inc., 96 F. App'x 831, 834-35 (3d Cir. 2004) (non-precedential), cited in Local Union No. 98 Int'l Bhd. of Elec. Workers v. RGB Services, LLC, 2011 WL 292233, *5 (E.D. Pa. Jan. 28, 2011) (Padova, J.) (explaining that no statute, regulation, or case law specifies when unpaid employer contributions become plan assets). See also, e.g., International Bhd. of Elec. Workers Local Union No. 98 Health & Welfare Fund v. James Copeland Elec. Contractor, 2011 WL 6739467, *8 (E.D. Pa. Dec. 22, 2011) (O'Neill, J.) (denying summary judgment because the record contained insufficient documentation from the trust agreements to determine whether unpaid contributions were plan assets); Einhorn v. Twentieth Century Refuse Removal Co., 2011 WL 6779760, *9 (D.N.J. Dec. 22, 2011) (Simandle, J.) (concluding that the parties' contractual obligations determined whether certain payments were plan assets); Local Union No. 98 Int'l Bhd. of Elec. Workers v. Riverview Elec. Constr., 2011 WL 4948825, *5 (E.D. Pa. Oct. 18, 2011)

8

(McLaughlin, J.) (explaining that the language in the trust agreement meant unpaid contributions were plan assets).

We therefore examine the terms of the Trust Agreements that created the Funds -- the Health Plan, Pension Plan, Profit Sharing Plan, and Apprenticeship Fund. All four Trust Agreements are between the Penn-Del-Jersey Chapter of the NECA and Local 98. See Initial Compl. Exs. F, G, H, & I. The Trust Agreement for the Health Plan provides, via amendment, that "[t]itle to all monies paid into said Fund shall be vested in the Trustees of the Fund, in trust as of the date the employer's obligation to contribute arises." Initial Compl. Ex. F. at 1-2. The Trust Agreement for the Pension Plan provides, via amendment, that "[t]itle to and possession of all monies which are contributions to be paid into the Fund shall be vested in the Trustees of the Fund as of the date the Covered Employer's obligation to contribute arises." Initial Compl. Ex. G at 2. The Trust Agreement for the Profit Sharing Plan provides, also via amendment, that "[t]itle to and possession of all monies which are contributions to be paid into the Fund shall be vested in the Trustees of the Fund as of the date the Covered Employer's obligation to contribute arises." Initial Compl. Ex. I at 2. The Trust Agreement for the Apprenticeship Fund provides, also via amendment, that "[t]itle to and possession of all monies which are contributions to be paid into the Fund shall be vested in the Trustees of the Fund as of the date the Covered Employer's obligation to contribute arises." Initial Compl. Ex. H at 2.

By the terms of all four Trust Agreements, employer contributions vest and become plan assets when they are due. Unpaid employer contributions, such as those allegedly owed by LMI, are therefore plan assets.[3]

---

[3] Courts have consistently held that very similar language means unpaid employer contributions are plan assets. See Local Union No. 98 Int'l Bhd. of Elec. Workers v. Riverview Elec. Constr., 2011 WL 4948825, *5 (E.D. Pa. Oct. 18, 2011) (McLaughlin, J.) (explaining that the language "title to all monies paid into [the funds] shall be vested in the Trustees of the Fund,

We next consider whether the individual defendants exercised discretionary control or authority over the plan assets.

Plaintiffs plead that Gina Console is an owner and officer of LMI with control over LMI's assets. Second Am. Compl. at ¶ 12. Defendants admit as much. See Second MTD Mem. at 1 ("Defendant Gina Console is the 100% owner and only officer of [LMI]."). Gina Console's total ownership of the alleged non-contributing employer, and her status as its sole officer, suffices to show her discretionary control or authority over the unpaid employer contributions for purposes of this motion to dismiss.

Plaintiffs plead that Anthony Console "is an owner and officer of [LMI] with control over the assets" of LMI. Second Am. Compl. at ¶ 13. The Funds also plead that Anthony Console, with Gina Console, is "responsible for preparing, reviewing, authorizing payment and submitting monthly report[s] and contributions to the Plaintiffs" and "maintain[s] both formal and practical authority to direct that proper fringe benefit contributions be paid to the Plaintiffs." Id. at ¶¶ 38-39. The Funds allege that Anthony Console sent a letter contesting plaintiffs' payroll audit in which he recounted his role in negotiating with Local 98 officials on LMI's behalf. Id. at ¶ 21; First Am. Compl. Ex. G.

Anthony Console, as a moving party under Rule 12(b)(6), bears the burden of proving that the Funds have failed to state a claim for relief. Fed. R. Civ. P. 12(b)(6); Hedges, 404 F.3d at 750. In addition to a plaintiffs' well-pled factual allegations -- which are sufficient, by themselves, to survive a motion to dismiss -- we may also consider any "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Pension Benefits Guar. Corp, 998 F.2d at 1196.

---

in trust as of the date the employer's obligation to contribute arises" rendered  unpaid contributions to be plan assets).

Defendants attached as an exhibit to their motion to dismiss an email from Novak Francella LLC to Anthony Console that showed his email address as "ampman2@aol.com." Second MTD Ex. C. Defendants also included various proofs of payment in which LMI's email is identified as "ampman2@aol.com." <u>See, e.g.</u>, Second MTD Ex. B at 6, 12, and 30. The Funds' claims are based, in part, on LMI's and the individual defendants' failure to submit the required contributions and deductions to the plaintiffs. No party disputes the authenticity of the documents attached to defendants' motion to dismiss. ERISA defines a fiduciary broadly, and the factual allegations that Anthony Console prepared, reviewed, or authorized contributions to the plaintiffs, as supported by these documents, is sufficient to survive a motion to dismiss.

The Funds have made a <u>prima facie</u> showing that both individual defendants are ERISA fiduciaries by virtue of their discretionary control over plan assets. We will therefore deny Gina Console and Anthony Console's motion to dismiss Count II.

## V.     <u>Conclusion</u>

Defendants have failed to carry their burden under Fed. R. Civ. P. 12(b)(6). We will therefore deny their motion to dismiss the second amended complaint. An appropriate Order follows.

BY THE COURT:

  <u>/s/ Stewart Dalzell, J.</u>
Stewart Dalzell, J.
